[No. 3470.]
## WAKEMAN v. NORTON.

1. PLEADING—REAL PARTY IN INTEREST.

The fact that the plaintiff is not the real party in interest, to be available as a defense, must be specially pleaded.

2. MINING CLAIMS—PRESUMPTION AS TO LATERAL RIGHTS.

It is to be presumed that the owner of a mining claim is the owner of all deposits of ore within the side lines of the location, until it shall be shown by a preponderance of the testimony that such deposits are part of a lode having its top or apex within the boundaries of another's claim.

3. SAME.

When a lode has been prospected and developed sufficiently to ascertain that, so far as developed, its strike is substantially parallel with the side lines of the claim, the owner is, *prima facie*, entitled to the presumption that it continues in the same direction throughout the length of the claim, and the same presumption obtains where extra lateral rights are involved.

*Appeal from the District Court of Dolores County.*

ON February 21, 1893, William B. Norton commenced this action against Fenno Wakeman in the district court of Dolores county. On May 16, 1893, an amended complaint was filed, upon which the cause was tried, wherein it is, *inter alia*, averred that from March 1, 1887, until January 4, 1893, the plaintiff was the owner and in the actual occupation and possession of the Zona K. lode mining claim, situate in the Pioneer mining district, county of Dolores, state of Colorado, describing the same by metes and bounds; that during that time the defendant wrongfully and secretly broke, extracted and removed therefrom silver, lead and gold bearing ores to the amount and value of $30,000.

The defendant, in his answer, denies each and every allegation of the complaint, not thereinafter admitted or qualified; and admits that between April 1, 1891 and October 15, 1892, he, as owner in and lessee of his co-owners of the Ethlena lode mining claim, situate in the same mining district and adjoining the Zona K. claim on the west, in following the Ethlena lode on its dip, entered the ground in controversy, and took and removed ore therefrom of the aggregate value of $2,500; and, as an affirmative defense, in substance avers that there exists a certain lode and vein within the surface boundaries of the Ethlena claim, which extends on its course and strike lengthwise through said claim, in the same general direction as its sidelines; that said lode and vein is in rock in place and extends downward with a dip and trend to the eastward, and departs so far from a perpendicular in its downward course that it passes through and beyond the eastern sideline of said claim, drawn vertically downward, and into ground within the surface boundaries of the Zona K. claim; that he, as a co-owner in and lessee of the other owners of the Ethlena claim, commenced work on said vein and lode below its apex, and within the surface boundaries of the Ethlena; that in exploring the same on its dip he ran drifts, stopes and levels beyond and to the east of the eastern sideline of the Ethlena, into the ground in controversy; that all of said work

was done upon and in said vein, and that no other entrance was made by him upon the Zona K. claim, and whatever ore he may have taken was taken in the exercise of his right to follow said vein on its dip.

Plaintiff, by his replication, traversed the allegations of the answer. The cause was tried to a jury. Upon the conclusion of plaintiff's evidence in chief, a motion for nonsuit was interposed and overruled. Thereupon evidence was introduced by the defendant on his part, and evidence in rebuttal, by the plaintiff. Verdict and judgment rendered in favor of plaintiff for $3,000 and costs. To reverse this judgment Wakeman prosecutes this appeal.

Mr. JOHN KINKAID and Mr. H. M. HOGG, for appellant.

Messrs. MORRISON & DE SOTO, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

The specifications of error are numerous, but the important objections they present may be included in the following questions: *First*, was the action rightly prosecuted in the name of the plaintiff? *Second*, was the evidence introduced by plaintiff sufficient to show a valid location of the Zona K. claim, and *prima facie* ownership by him of the ground from which the ore was taken? *Third*, did the court err in giving and modifying certain instructions defining the law relative to apex rights?

Upon the trial of the cause the defendant undertook to show that the plaintiff was not the real party in interest, by inquiring of plaintiff upon cross-examination, if he had not, in parting with his title to the Zona K. claim prior to the commencement of suit, transferred to his grantee the right of action for the trespass complained of. We think the objection to this inquiry was properly sustained. Aside from the reason that it was not proper cross-examination, it was clearly inadmissible under the pleadings, such defense

not having been pleaded. The defense that a plaintiff is not the real party in interest, to be available, must be specially pleaded. Pom. Rem. & Rem. Rights, § 711, and cases cited.

It is urged in support of the second objection that the evidence introduced by plaintiff was insufficient to show a valid location of the Zona K. claim, or title thereto in the plaintiff, and that it also failed to show that the vein from which the ore in controversy was taken had its top or apex within the surface boundaries of that claim, but that it did disclose the. fact that such apex was not so included. It appears from the evidence that a location certificate of the Zona K. claim was filed in 1880, by one McKenzie. Plaintiff testifies that he purchased the claim from one Dumont, and entered into possession in 1885. At that time he found a notice posted at the point of discovery, that the claim was staked, without specifying in what manner; that the discovery disclosed good ore at the outcrop of the Zona K. vein; that he was in possession of the claim from the date of his purchase until he sold the same in 1894; and that he did one hundred and ten feet of work on the claim.

It further appears that an amended location certificate made by him was recorded on September 15, 1890, and that he also made and filed another amended location certificate on October 2, 1891. The defendant asserts no claim to the Zona K. claim itself, but justifies his intrusion within its surface boundaries upon his right to follow on its dip a vein which has its top or apex outside such surface boundaries. Notwithstanding his omission to produce the written conveyances showing the transfer of the title from the original locator to him, we think the evidence sufficiently shows a valid and subsisting location, in the actual and lawful possession of the plaintiff, which, *prima facie* at least, entitles him to maintain the present action.

But assuming that the validity and ownership of the Zona K. claim was sufficiently established for this purpose, appellant still contends that the evidence introduced on the part

of appellee was wholly insufficient to entitle him to a recovery, since it failed to show that the vein from which the ore in question was taken had its top or apex within the boundaries of that claim; and insists that the burden rests upon appellee to establish the fact that the ore was taken from a vein or lode whose top or apex is within the surface lines of his claim, to entitle him to a recovery therefor. In other words, that so long as the intruder does not interfere with a vein whose top or apex is within the surface boundaries of plaintiff's claim, he has no right of complaint, regardless of the fact that ore is taken from within his ground, by one who neither has nor claims the lawful right to take the same.

With this contention we cannot agree. While it is true that the locator of a mining claim takes it subject to the right of others to follow and take ore from any vein on its dip through his ground, the top or apex of which is included within another valid lode location, yet we think he is entitled to the presumption that what is contained within his surface boundaries is his, until the conditions upon which such extra lateral right depends are shown to exist, by the one who seeks to avail himself of such right. In *Leadville Mining Co. v. Fitzgerald*, 4 Morrison's Mining Reports, 380, Judge. Hallett thus concisely states what we believe to be the correct rule in such cases:

"Within the lines of each location the owner shall be regarded as having full right to all that may be found, until some one can show a clear title to it as part of some lode or vein having its top and apex in other territory. To state the proposition in other words, we may say that there is a presumption of ownership in every locator as to the territory covered by his location, and within his own lines he shall be regarded as the owner of all valuable deposits, until some one shall show by preponderance of testimony that such deposits belong to another lode having its top and apex elsewhere."

To the same effect are *Doe v. Waterloo M. Co.*, 54 Fed. Rep. 935; *Con. Wyo. Gold M. Co. v. Champion M. Co.*, 63

Fed. Rep. 540; *Duggan v. Davey*, 4 Dak. 110; *Cheesman v. Shreve*, 16 Morrison's M. Rep. 79; *I. S. M. Co. v. Elgin M. & S. Co.*, 118 U. S. 196; *I. S. M. Co. v. Campbell*, 17 Colo. 267.

In this view the plaintiff's evidence was *prima facie* sufficient to show his ownership of the ore taken from within the ground of the Zona K. claim, and it devolved upon the defendant to show his right thereto by a preponderance of evidence. The motion for nonsuit was properly denied. From this conclusion it follows that in meeting the burden imposed upon him to show his right to the ore in question by reason of the ownership of a vein or lode, the apex of which was included within the surface boundaries of the Ethlena claim, the defendant was entitled to have the jury correctly informed as to the law defining the rights of the owner of such a vein, and prescribing the conditions under which he is entitled to extra lateral rights.

Appellant claims that the law in this respect was not correctly given; that the court erred in its general instruction No. 6, wherein the jury were informed that "the apex must pass through both lines claimed as end lines. If the apex of the vein does not so pass through both the lines claimed as end lines, such lines can be considered only as side lines, and no location which has not end lines within the intent of the law can give any rights beyond its surface boundaries." And also in modifying instructions No. 5 and 6 asked by him, which in substance requested the court to instruct the jury that if they found from the evidence that the owners of the Ethlena lode, or their grantors, had prospected and determined the course and direction of the Ethlena lode, and had found the course and strike of the lode as far as developed to be substantially parallel with, and running in the same direction as, the side lines of said claim, that he was entitled, *prima facie*, to the presumption that such vein continues throughout the length, and passes through the end lines, of said claim. The court added a modification to the effect that such presumption obtained only for the purpose of rights over the surface of the claim, and within the surface boundaries thereof,

extending downward vertically, thereby depriving defendant of the benefit of such presumption so far as extra lateral rights were concerned.   In instructing the jury that, in order to give any extra lateral rights, it was essential that the apex or top of a vein should on its course pass through both end lines of a claim, the court imposed a condition that has not heretofore been announced as an essential to the exercise of such right in any of the adjudicated cases.   It has never been expressly decided by the supreme court of the United States that if a vein enters one end line, and while its course and strike is more in the direction of the side than the end lines, yet at some point crosses a side line, that such vein may or may not be followed on its dip.

Nor do we regard that question as involved in this case. Neither the pleadings nor the evidence present that issue. The theory of defendant, as disclosed by the allegations of his answer and proof, is that the apex of the Ethlena lode is entirely within the Ethlena location and passes through both end lines; while the plaintiff claims, and attempts to show, that if the lode from which the ore was taken has an apex in the meaning of the statute, that it is within territory to the north of the Ethlena claim, and runs parallel with its end lines.   It is manifest, therefore, that the question whether a locator of a mining claim has a right to follow a vein on its dip, when its top or apex passes through one end line, and on its strike departs from one of the side lines of his claim, is not presented in this case.   The theory of defendant being that the Ethlena vein passes through both end lines, and having predicated his right to follow it into the ground in controversy because of the existence of that fact, he is not in a position to complain because the court gave the law applicable to such a theory.   And since, therefore, the facts disclosed by the record do not require it, we are not at liberty to determine whether the extra lateral right conferred by the statute is incident to a lode or vein, the top or apex of which does not pass through both end lines.   But, we are of the opinion, however, that under the

testimony defendant was entitled to have properly submitted to the jury the question whether the Ethlena lode did have an apex within the Ethlena claim; and if so, whether in its course, it extended through both end lines. If he and his grantors had prospected and developed the lode sufficiently to ascertain that, so far as developed, its course and strike were substantially parallel with, and ran in the same direction as the side lines, he was entitled to the *prima facie* presump·· tion that it continued in the same direction throughout the length of the claim. *Armstrong v. Lower*, 6 Colo. 393 and 581. And this presumption obtains where extra lateral, as well as surface, rights are involved. We think, therefore, the court erred in modifying the instructions referred to in this respect, and that such error was probably prejudicial to defendant's rights. We deem it unnecessary to notice the other errors assigned. We think, aside from the objections above considered, that the court correctly announced the law governing the case. For the reasons given the judgment is reversed and the case remanded.

*Reversed.*